CARGILL, INCORPORATED    Purchase Contract

Buyer:  Hickman, CAH
        PO Box 267
        Hickman, KY 42050

Contract: HICK-AH-48729
Firm Offer: HICK-AH-961
Contract Date: 12/28/06
Page: 1 of 1

RECEIVED JAN 2 9 2007

Seller:  Howell Farms, Sidney
         1925 St. Rt. 2206
         Clinton, KY 42031

Buyer confirms its purchase from Seller and Seller confirms its sale and obligation to deliver the listed Commodity to Buyer under the following terms and conditions:

No Basis Established Contract

Line: 1 of 1
Audit: 29356

Commodity/Grade: U.S. No. 2 Yellow Corn
Quantity: 10,000.000 Bushel
Delivery Point: Delivered Hickman A (Ashland), CAH
Contract Price: USD 3.6000 Chicago Corn Sep 08 per Bushel
Price Type: No Basis Established

Shipment Period: 09/01/08-09/30/08
Weights to Govern: Destination Unofficial Weights
Grades to Govern: Destination Unofficial Grades
Rules to Govern: NGFA

**Transportation Terms**
Truck

**Discount Schedule**
yc #2 schedule at time of Unload

**Basis Terms**
Seller shall set the basis using Buyer's basis quotes at the Delivery Point for the Commodity and Shipment Period, on or before the EARLIER of (a) the first date of delivery during the Shipment Period, (b) the last business day of the Shipment Period or (c) the last business day before the first day of the Futures Reference Month, which is August 29, 2008. If Seller fails to set the basis as provided herein, Buyer shall have the right but not the obligation to set the basis.

**NBE Service Charges**
A service fee of USD 0.0200 per Bushel shall be assessed against Seller at the time the contract is entered and a service fee of USD 0.0100 per Bushel at each amendment of the futures reference month. The fees shall be due and payable at settlement.

**Aflatoxin Clause**
Commodities delivered on this contract must not contain more than 20PPB aflatoxin at final destination. Aflatoxin test method to be selected by the Buyer. Test to be performed by Buyer or party selected by Buyer.

**United States Origin**
Seller guarantees that all commodities delivered under this contract have been, or will have been grown in the continental United States.

**Water Clause**
Seller also warrants that no water has been added to the grain sold hereunder at any time or for any purpose except when used as a carrier for residual insecticides at manufacturers recommended levels. These representations may be relied upon by the buyer in the resale of these commodities.

**Genetically Enhanced Crops**
Buyer will accept for delivery any genetically enhanced crops approved for use in the United States. Seller must notify the Buyer in writing prior to delivery of any non-European Union approved varieties under this contract.

---

Where present the terms of this agreement include terms and conditions set forth on the reverse side hereof, which form a part of this contract, and which are legally binding upon the Seller and Buyer.

Please sign and date the original and attached copy of this contract. The original must be returned to Buyer at the above-referenced address, and the copy should be retained for Seller's records.

Accepted (Seller): *Sidney Howell* (at address shown above)

By: *Sidney Howell D.B.A. Howell Farms*  1/16/2007  M D Y

Accepted (Buyer): Cargill, Incorporated

By: *Jarrod Ulen*   M D Y

# PURCHASE TERMS

The statements below and on the reverse side are understood to be an accurate statement of the terms and conditions of the agreement between the parties hereto. Failure to advise Buyer immediately of any discrepancies, objections to or disagreement with such terms and conditions shall constitute acceptance of this Contract.

1. **NGFA Trade and Arbitration Rules.** Unless otherwise provided herein, this Contract shall be subject to the Trade Rules of the National Grain and Feed Association (NGFA), which Trade Rules are incorporated herein by reference. The parties agree that the sole forum for resolution of all disagreements or disputes between the parties arising under this Contract or relating to the formation of this Contract shall be arbitration proceedings before NGFA pursuant to NGFA Arbitration Rules. The decision and award determined by such arbitration shall be final and binding upon both parties and judgment upon the award may be entered in any court having jurisdiction thereof. Copies of the NGFA Trade and Arbitration Rules are available from Buyer upon request and are available at www.ngfa.org.

2. **Grade Factors and U.S. Origin.** Unless otherwise specified, official inspection shall include only official grading factors that are included in the United States Grain Standards Act. Seller represents, warrants and guarantees that all commodities delivered under this Contract have been or will have been grown in the continental United States.

3. **Buyer's Excuse from Performance.** Buyer shall not be liable for any prevention or delay in performance resulting in whole or in part, directly or indirectly, from fires, floods, or other acts of God; strikes; lockouts, or labor disputes; wars, riots, acts of terrorism, sabotage, or embargoes, actions by foreign, federal, state or local governments; shortages of transportation equipment, fuel, or labor; or any other circumstance beyond Buyer's control.

4. **Seller's Warranties.** Commodities sold hereunder must be of merchantable quality upon delivery. In addition, Seller guarantees that no carload or other shipping unit of the commodity covered by this Contract shall be adulterated or misbranded within the meaning of the Federal Food, Drug, and Cosmetic Act or is an article or commodity which may not, under the provisions of Section 404 or 505 of the Act, be introduced into interstate commerce or is in violation of any other provision of said Act. Seller further warrants that neither the commodity nor the shipment of such commodity shall be in violation of any and all other federal, state and local laws, regulations or ordinances, including without limitation the California Safe Drinking Water and Toxic Enforcement Act of 1986 (Proposition 65). If the commodity is adulterated under any applicable laws, or the commodity or its shipment is in violation of any other clause of this provision, Seller shall be in breach of this Contract, shall indemnify Buyer from all claims, costs, damages, and losses, whether arising out of Seller's negligence or strict liability, and Buyer may take advantage of any and all available remedies, whether under this Contract, at law or in equity.

5. **Title.** Title to, all rights of ownership in and risk of loss of the commodity shall remain in Seller until physical delivery to Buyer's designated Delivery Point, at which time such rights shall pass to Buyer unless delivery is made to Buyer under a storage agreement, in which case such rights shall pass upon application of the commodity to a purchase contract with Buyer.

6. **Liens and Merchant Status.** Seller agrees that when delivered hereunder, said commodity will be free and clear of all liens and encumbrances of every nature or, if any liens exist at time of delivery, Seller authorizes Buyer to make settlement jointly with the Seller and such person or persons in whose favor the lien or encumbrance has attached. The undersigned Seller represents and warrants to Buyer that Seller is a MERCHANT (as that term is used in the UCC) with respect to the commodity that is the subject matter hereof.

7. **Buyer Information.** Seller acknowledges that Seller is solely responsible for the marketing and pricing of the commodity and is entering into this Contract with full knowledge and understanding of the risks inherent in Seller's business and decisions. Any statements, information, opinions, or advice provided to Seller by Buyer's employees are provided solely for informational purposes and without guarantee, express or implied, on Buyer's part. Seller understands and agrees that any statements, information, opinions, or advice expressed by Buyer shall in no way operate to create any managerial or fiduciary obligation between Buyer and Seller.

8. **Alternate Delivery.** Buyer shall have the right to designate any reasonable alternate delivery points if necessary to expedite or facilitate Seller's performance of this Contract but shall have no obligation to do so. Increased shipping charges under this provision shall be for Seller's account and reductions in shipping charges shall be for Buyer's account; provided, however, that if the designated alternate delivery points are solely for Buyer's convenience, increased shipping charges shall be for Buyer's account.

9. **Freight Rates.** Any advance in applicable freight rates taking effect before fulfillment of this Contract shall be for Seller's account.

10. **Adequate Assurance.** Buyer shall have the right, when it has reasonable grounds for insecurity with respect to the performance of Seller, to demand adequate assurance of Seller's full performance. As adequate assurance, Buyer may demand payment from Seller up to an amount equal to the difference between the Contract price and the then prevailing market price for the commodity hereunder. Seller shall provide such adequate assurance within 48 hours of the receipt of the demand therefor. Seller's failure to provide adequate assurance as demanded by Buyer shall constitute Seller's repudiation of this Contract, and Buyer shall have the right to pursue all legally available remedies, including but not limited to recovery of its losses and damages.

11. **Cancellation.** Buyer expressly reserves the right to cancel this Contract without liability to Buyer because of (a) the insolvency or financial condition of Seller, (b) the commencement of a case under 11 U.S.C.§§101 et seq., (c) the appointment of or taking of possession by a trustee in a case under 11 U.S.C.§§101 et seq. or by a custodian before such commencement, (d) any breach or default by Seller of the terms and conditions of this Contract.

12. **Set Off.** Without limiting Buyer's right to pursue any and all other rights and remedies available to it, it is expressly agreed that, to the fullest extent permissible by law, this Contract is subject to Buyer's right to set off any debts and/or claims against Seller, including, but not limited to those debts and/or claims that are exempt from a bankruptcy stay as provided in 11 U.S.C.§362 (b) (6).

13. **Non-Waiver.** Acceptance of any delivery of commodities by Buyer after breach of the terms and conditions of this Contract by Seller shall not waive any rights or remedies accruing to Buyer as a result of such prior breach.

14. **EEO.** BUYER IS AN EQUAL OPPORTUNITY EMPLOYER, and is a government contractor. Therefore this Contract is subject to the rules and regulations imposed upon contractors and subcontractors pursuant to 41 C.F.R. Chapter 60 and 61. Unless this Contract is exempt by regulations issued by the Secretary of Labor, there is incorporated herein by reference 41 C.F.R. Section 60—1.4; 41 C.F.R. Sections 60—250.5 and 61—250.10; and 41 C.F.R. Section 60—741.5.

15. **Amendment and Assignment.** None of the terms and conditions contained in this Contract may be added to, modified, superseded, or otherwise altered except with the written consent of an authorized representative of Buyer. This Agreement may be assigned by Buyer without Seller's consent but shall not be assigned in whole or in part by Seller without the prior written consent of Buyer.

16. **Water.** Seller represents, warrants and guarantees that no water has been added to the grain sold hereunder at any time or for any purpose except when used as a carrier for residual insecticides at manufacturer's recommended levels. Buyer may rely upon these representations in the resale of the commodities delivered hereunder.

XLYNX-134 (11/04)

# CARGILL, INCORPORATED     Purchase Contract

Buyer: Hickman, CAH
PO Box 267
Hickman, KY 42050

Contract: HICK-AH-49305
Contract Date: 02/09/07
Page: 1 of 2

Seller: Howell Farms, Sidney
1925 St. Rt. 2206
Clinton, KY 42031

Buyer confirms its purchase from Seller and Seller confirms its sale and obligation to deliver the listed Commodity to Buyer under the following terms and conditions:

## No Basis Established Contract

Line: 1 of 1
Audit: 29966

Commodity/Grade: U.S. No. 2 Soft Red Winter Wheat
Quantity: 5,000.000 Bushel
Delivery Point: Delivered Hickman A (Ashland), CAH
Contract Price: USD 4.9100 Chicago Wheat Jul 08 per Bushel
Price Type: No Basis Established

Shipment Period: 06/01/08-06/30/08
Weights to Govern: Destination Unofficial Weights
Grades to Govern: Destination Unofficial Grades
Rules to Govern: NGFA

**Transportation Terms**
Truck

**Discount Schedule**
srww #2 shedules at time of Unload

**Basis Terms**
Seller shall set the basis using Buyer's basis quotes at the Delivery Point for the Commodity and Shipment Period, on or before the EARLIER of (a) the first date of delivery during the Shipment Period, (b) the last business day of the Shipment Period or (c) the last business day before the first day of the Futures Reference Month, which is June 30, 2008. If Seller fails to set the basis as provided herein, Buyer shall have the right but not the obligation to set the basis.

**NBE Service Charges**
A service fee of USD 0.0200 per Bushel shall be assessed against Seller at the time the contract is entered and a service fee of USD 0.0100 per Bushel at each amendment of the futures reference month. The fees shall be due and payable at settlement. For deferred sales beyond current crop year, additional service fees may apply - see misc terms.

**Deferred NBE Service Fee**
Additional NBE Service Charge of 4 cents/bushel (12-18 months) or 5 cents/bushel (greater than 18 months) will be assessed and will be payable at settlement.

**United States Origin**
Seller guarantees that all commodities delivered under this contract have been, or will have been grown in the continental United States.

**Vomitoxin Clause**
Grain delivered under this contract shall not contain more than 20ppm (parts per million) of vomitoxin at final destination. Vomitoxin test method is to be selected by Buyer. Test is to be performed by Buyer or party selected by Buyer.

**Water Clause**
Seller also warrants that no water has been added to the grain sold hereunder at any time or for any purpose except when used as a carrier for residual insecticides at manufacturers recommended levels. These representations may be relied upon by the buyer in the resale of these commodities.

**Price Amendment**
The No Basis Established Price Amendment term is as follows. The futures contract month and year under this contract may not be amended.

**Genetically Enhanced Crops**
Buyer will accept for delivery any genetically enhanced crops approved for use in the United States. Seller must notify the Buyer in writing prior to delivery of any non-European Union approved varieties under this contract.

*** COPY ***

## PURCHASE TERMS

The statements below and on the reverse side are understood to be an accurate statement of the terms and conditions of the agreement between the parties hereto. Failure to advise Buyer immediately of any discrepancies, objections to or disagreement with such terms and conditions shall constitute acceptance of these terms and conditions.

1. **NGFA Trade and Arbitration Rules.** Unless otherwise provided herein, this Contract, and all other grain contracts by and between Buyer and Seller, shall be subject to the Trade Rules of the National Grain and Feed Association (NGFA), which Trade Rules are incorporated herein by reference. The parties agree that the sole forum for resolution of all disagreements or disputes between the parties arising under any grain contract between Buyer and Seller or relating to the formation of any grain contract between Buyer and Seller shall be arbitration proceedings before NGFA pursuant to NGFA Arbitration Rules. The decision and award determined by such arbitration shall be final and binding upon both parties and judgment upon the award may be entered in any court having jurisdiction thereof. Copies of the NGFA Trade and Arbitration Rules are available from Buyer upon request and are available at www.ngfa.org. In addition to any damages otherwise provided by law, Buyer shall be entitled to recovery of its attorney's fees and costs.

2. **Grade Factors and U.S. Origin.** Unless otherwise specified, official inspection shall include only official grading factors that are included in the United States Grain Standards Act. Seller represents, warrants and guarantees that all commodities delivered under this Contract have been or will have been grown in the continental United States.

3. **Buyer's Excuse from Performance.** Buyer shall not be liable for any prevention or delay in performance resulting in whole or in part, directly or indirectly, from fires, floods, or other acts of God; strikes; lockouts, or labor disputes; wars, riots, acts of terrorism, sabotage, or embargoes, actions by foreign, federal, state or local governments; shortages of transportation equipment, fuel, or labor; or any other circumstance beyond Buyer's control.

4. **Seller's Warranties.** Commodities sold hereunder must be of merchantable quality upon delivery. In addition, Seller guarantees that no carload or other shipping unit of the commodity covered by this Contract shall be adulterated or misbranded within the meaning of the Federal Food, Drug, and Cosmetic Act or is an article or commodity which may not, under the provisions of Section 404 or 505 of the Act, be introduced into interstate commerce or is in violation of any other provision of said Act. Seller further warrants that neither the commodity nor the shipment of such commodity shall be in violation of any and all other federal, state and local laws, regulations or ordinances, including without limitation the California Safe Drinking Water and Toxic Enforcement Act of 1986 (Proposition 65). If the commodity is adulterated under any applicable laws, or the commodity or its shipment is in violation of any other clause of this provision, Seller shall be in breach of this Contract, shall indemnify Buyer from all claims, costs, damages, and losses, whether arising out of Seller's negligence or strict liability, and Buyer may take advantage of any and all available remedies, whether under this Contract, at law or in equity.

5. **Title.** Title to, all rights of ownership in and risk of loss of the commodity shall remain in Seller until physical delivery to Buyer's designated Delivery Point, at which time such rights shall pass to Buyer unless delivery is made to Buyer under a storage agreement, in which case such rights shall pass upon application of the commodity to a purchase contract with Buyer.

6. **Liens and Merchant Status.** Seller agrees that when delivered hereunder, said commodity will be free and clear of all liens and encumbrances of every nature or, if any liens exist at time of delivery, Seller authorizes Buyer to make settlement jointly with the Seller and such person or persons in whose favor the lien or encumbrance has attached. The undersigned Seller represents and warrants to Buyer that Seller is a MERCHANT (as that term is used in the UCC) with respect to the commodity that is the subject matter hereof.

7. **Buyer Information.** Seller acknowledges that Seller is solely responsible for the marketing and pricing of the commodity and is entering into this Contract with full knowledge and understanding of the risks inherent in Seller's business and decisions. Any statements, information, opinions, or advice provided to Seller by Buyer's employees are provided solely for informational purposes and without guarantee, express or implied, on Buyer's part. Seller understands and agrees that any statements, information, opinions, or advice expressed by Buyer shall in no way operate to create any managerial or fiduciary obligation between Buyer and Seller.

8. **Alternate Delivery.** Buyer shall have the right to designate any reasonable alternate delivery points if necessary to expedite or facilitate Seller's performance of this Contract but shall have no obligation to do so. Increased shipping charges under this provision shall be for Seller's account and reductions in shipping charges shall be for Buyer's account; provided, however, that if the designated alternate delivery points are solely for Buyer's convenience, increased shipping charges shall be for Buyer's account.

9. **Freight Rates.** Any advance in applicable freight rates taking effect before fulfillment of this Contract shall be for Seller's account.

10. **Adequate Assurance.** Buyer shall have the right, when it has reasonable grounds for insecurity with respect to the performance of Seller, to demand adequate assurance of Seller's full performance. As adequate assurance, Buyer may demand payment from Seller up to an amount equal to the difference between the Contract price and the then prevailing market price for the commodity hereunder. Seller shall provide such adequate assurance within 48 hours of the receipt of the demand therefor. Seller's failure to provide adequate assurance as demanded by Buyer shall constitute Seller's repudiation of this Contract, and Buyer shall have the right to pursue all legally available remedies, including but not limited to recovery of its losses and damages, including, without limiting the foregoing, attorney's fees and costs incurring in litigation, arbitration, confirmation and execution.

11. **Cancellation.** Buyer expressly reserves the right to cancel this Contract without liability to Buyer because of (a) the insolvency or financial condition of Seller, (b) the commencement of a case under 11 U.S.C.§§101 et seq., (c) the appointment of or taking of possession by a trustee in a case under 11 U.S.C.§§101 et seq. or by a custodian before such commencement, (d) any breach or default by Seller of the terms and conditions of this Contract.

12. **Set Off.** Without limiting Buyer's right to pursue any and all other rights and remedies available to it, it is expressly agreed that, to the fullest extent permissible by law, this Contract is subject to Buyer's right to set off any debts and/or claims against Seller, including, but not limited to those debts and/or claims that are exempt from a bankruptcy stay as provided in 11 U.S.C.§362 (b) (6).

13. **Non-Waiver.** Acceptance of any delivery of commodities by Buyer after breach of the terms and conditions of this Contract by Seller shall not waive any rights or remedies accruing to Buyer as a result of such prior breach.

14. **EEO.** BUYER IS AN EQUAL OPPORTUNITY EMPLOYER, and is a government contractor. Therefore this Contract is subject to the rules and regulations imposed upon contractors and subcontractors pursuant to 41 C.F.R. Chapter 60 and 61. Unless this Contract is exempt by regulations issued by the Secretary of Labor, there is incorporated herein by reference 41 C.F.R. Section 60—1.4; 41 C.F.R. Sections 60—250.5 and 61—250.10; and 41 C.F.R. Section 60—741.5.

15. **Amendment and Assignment.** None of the terms and conditions contained in this Contract may be added to, modified, superseded, or otherwise altered except with the written consent of an authorized representative of Buyer. This Agreement may be assigned by Buyer without Seller's consent but shall not be assigned in whole or in part by Seller without the prior written consent of Buyer.

16. **Water.** Seller represents, warrants and guarantees that no water has been added to the grain sold hereunder at any time or for any purpose except when used as a carrier for residual insecticides at manufacturer's recommended levels. Buyer may rely upon these representations in the resale of the commodities delivered hereunder.

XLYNX-134 (12/06)

**CARGILL, INCORPORATED**  Purchase Contract

Buyer: Hickman, CAH
PO Box 267
Hickman, KY 42050

Contract: HICK-AH-49305
Contract Date: 02/09/07
Page: 2 of 2

Seller: Howell Farms, Sidney
1925 St. Rt. 2206
Clinton, KY 42031


RECEIVED FEB 2 0 2007

Buyer confirms its purchase from Seller and Seller confirms its sale and obligation to deliver the listed Commodity to Buyer under the following terms and conditions:

Where present the terms of this agreement include terms and conditions set forth on the reverse side hereof, which form a part of this contract, and which are legally binding upon the Seller and Buyer.

Please sign and date the original and attached copy of this contract. The original must be returned to Buyer at the above-referenced address, and the copy should be retained for Seller's records.

Accepted (Seller): _____
(at address shown above)
By: Sidney Howell  2/16/09
      M D Y
D.B.A. Howell Farms
Clinton, Ky.

Accepted (Buyer): Cargill, Incorporated
By: _____  2/9/07
      Jarrod Ulen         M D Y

# CARGILL, INCORPORATED — Purchase Contract

**Buyer:** Hickman, CAH
PO Box 267
Hickman, KY 42050

Contract: HICK-AH-49356
Firm Offer: HICK-AH-1086
Contract Date: 02/15/07
Page: 1 of 2

**Seller:** Howell Farms, Sidney
1925 St, Rt. 2206
Clinton, KY 42031

Buyer confirms its purchase from Seller and Seller confirms its sale and obligation to deliver the listed Commodity to Buyer under the following terms and conditions:

## No Basis Established Contract

Line: 1 of 1
Audit: 30031

Commodity/Grade: U.S. No. 2 Yellow Corn
Quantity: 5,000.000 Bushel
Delivery Point: Delivered Hickman A (Ashland), CAH
Contract Price: USD 3.9000 Chicago Corn Sep 08 per Bushel
Price Type: No Basis Established

Shipment Period: 09/01/08-09/30/08
Weights to Govern: Destination Unofficial Weights
Grades to Govern: Destination Unofficial Grades
Rules to Govern: NGFA

**Transportation Terms**
Truck

**Discount Schedule**
yc #2 schedule at time of Unload

**Basis Terms**
Seller shall set the basis using Buyer's basis quotes at the Delivery Point for the Commodity and Shipment Period, on or before the EARLIER of (a) the first date of delivery during the Shipment Period, (b) the last business day of the Shipment Period or (c) the last business day before the first day of the Futures Reference Month, which is **August 29, 2008**. If Seller fails to set the basis as provided herein, Buyer shall have the right but not the obligation to set the basis.

**NBE Service Charges**
A service fee of USD 0.0200 per Bushel shall be assessed against Seller at the time the contract is entered and a service fee of USD 0.0100 per Bushel at each amendment of the futures reference month. The fees shall be due and payable at settlement. For deferred sales beyond current crop year, additional service fees may apply - see misc terms.

**Deferred NBE Service Fee**
Additional NBE Service Charge of 4 cents/bushel (12-18 months) or 5 cents / bushel (greater than 18 months) will be assessed and will be payable at settlement.

**Aflatoxin Clause**
Commodities delivered on this contract must not contain more than 20PPB aflatoxin at final destination. Aflatoxin test method to be selected by the Buyer. Test to be performed by Buyer or party selected by Buyer.

**United States Origin**
Seller guarantees that all commodities delivered under this contract have been, or will have been grown in the continental United States.

**Water Clause**
Seller also warrants that no water has been added to the grain sold hereunder at any time or for any purpose except when used as a carrier for residual insecticides at manufacturers recommended levels. These representations may be relied upon by the buyer in the resale of these commodities.

**Genetically Enhanced Crops**
Buyer will accept for delivery any genetically enhanced crops approved for use in the United States. Seller must notify the Buyer in writing prior to delivery of any non-European Union approved varieties under this contract.

*** COPY ***

## PURCHASE TERMS

The statements below and on the reverse side are understood to be an accurate statement of the terms and conditions of the agreement between the parties hereto. Failure to advise Buyer immediately of any discrepancies, objections to or disagreement with such terms and conditions shall constitute acceptance of these terms and conditions.

1. **NGFA Trade and Arbitration Rules.** Unless otherwise provided herein, this Contract, and all other grain contracts by and between Buyer and Seller, shall be subject to the Trade Rules of the National Grain and Feed Association (NGFA), which Trade Rules are incorporated herein by reference. The parties agree that the sole forum for resolution of all disagreements or disputes between the parties arising under any grain contract between Buyer and Seller or relating to the formation of any grain contract between Buyer and Seller shall be arbitration proceedings before NGFA pursuant to NGFA Arbitration Rules. The decision and award determined by such arbitration shall be final and binding upon both parties and judgment upon the award may be entered in any court having jurisdiction thereof. Copies of the NGFA Trade and Arbitration Rules are available from Buyer upon request and are available at www.ngfa.org. In addition to any damages otherwise provided by law, Buyer shall be entitled to recovery of its attorney's fees and costs.

2. **Grade Factors and U.S. Origin.** Unless otherwise specified, official inspection shall include only official grading factors that are included in the United States Grain Standards Act. Seller represents, warrants and guarantees that all commodities delivered under this Contract have been or will have been grown in the continental United States.

3. **Buyer's Excuse from Performance.** Buyer shall not be liable for any prevention or delay in performance resulting in whole or in part, directly or indirectly, from fires, floods, or other acts of God; strikes; lockouts, or labor disputes; wars, riots, acts of terrorism, sabotage, or embargoes, actions by foreign, federal, state or local governments; shortages of transportation equipment, fuel, or labor; or any other circumstance beyond Buyer's control.

4. **Seller's Warranties.** Commodities sold hereunder must be of merchantable quality upon delivery. In addition, Seller guarantees that no carload or other shipping unit of the commodity covered by this Contract shall be adulterated or misbranded within the meaning of the Federal Food, Drug, and Cosmetic Act or is an article or commodity which may not, under the provisions of Section 404 or 505 of the Act, be introduced into interstate commerce or is in violation of any other provision of said Act. Seller further warrants that neither the commodity nor the shipment of such commodity shall be in violation of any and all other federal, state and local laws, regulations or ordinances, including without limitation the California Safe Drinking Water and Toxic Enforcement Act of 1986 (Proposition 65). If the commodity is adulterated under any applicable laws, or the commodity or its shipment is in violation of any other clause of this provision, Seller shall be in breach of this Contract, shall indemnify Buyer from all claims, costs, damages, and losses, whether arising out of Seller's negligence or strict liability, and Buyer may take advantage of any and all available remedies, whether under this Contract, at law or in equity.

5. **Title.** Title to, all rights of ownership in and risk of loss of the commodity shall remain in Seller until physical delivery to Buyer's designated Delivery Point, at which time such rights shall pass to Buyer unless delivery is made to Buyer under a storage agreement, in which case such rights shall pass upon application of the commodity to a purchase contract with Buyer.

6. **Liens and Merchant Status.** Seller agrees that when delivered hereunder, said commodity will be free and clear of all liens and encumbrances of every nature or, if any liens exist at time of delivery, Seller authorizes Buyer to make settlement jointly with the Seller and such person or persons in whose favor the lien or encumbrance has attached. The undersigned Seller represents and warrants to Buyer that Seller is a MERCHANT (as that term is used in the UCC) with respect to the commodity that is the subject matter hereof.

7. **Buyer Information.** Seller acknowledges that Seller is solely responsible for the marketing and pricing of the commodity and is entering into this Contract with full knowledge and understanding of the risks inherent in Seller's business and decisions. Any statements, information, opinions, or advice provided to Seller by Buyer's employees are provided solely for informational purposes and without guarantee, express or implied, on Buyer's part. Seller understands and agrees that any statements, information, opinions, or advice expressed by Buyer shall in no way operate to create any managerial or fiduciary obligation between Buyer and Seller.

8. **Alternate Delivery.** Buyer shall have the right to designate any reasonable alternate delivery points if necessary to expedite or facilitate Seller's performance of this Contract but shall have no obligation to do so. Increased shipping charges under this provision shall be for Seller's account and reductions in shipping charges shall be for Buyer's account; provided, however, that if the designated alternate delivery points are solely for Buyer's convenience, increased shipping charges shall be for Buyer's account.

9. **Freight Rates.** Any advance in applicable freight rates taking effect before fulfillment of this Contract shall be for Seller's account.

10. **Adequate Assurance.** Buyer shall have the right, when it has reasonable grounds for insecurity with respect to the performance of Seller, to demand adequate assurance of Seller's full performance. As adequate assurance, Buyer may demand payment from Seller up to an amount equal to the difference between the Contract price and the then prevailing market price for the commodity hereunder. Seller shall provide such adequate assurance within 48 hours of the receipt of the demand therefor. Seller's failure to provide adequate assurance as demanded by Buyer shall constitute Seller's repudiation of this Contract, and Buyer shall have the right to pursue all legally available remedies, including but not limited to recovery of its losses and damages, including, without limiting the foregoing, attorney's fees and costs incurring in litigation, arbitration, confirmation and execution.

11. **Cancellation.** Buyer expressly reserves the right to cancel this Contract without liability to Buyer because of (a) the insolvency or financial condition of Seller, (b) the commencement of a case under 11 U.S.C.§§101 et seq., (c) the appointment of or taking of possession by a trustee in a case under 11 U.S.C.§§101et seq. or by a custodian before such commencement, (d) any breach or default by Seller of the terms and conditions of this Contract.

12. **Set Off.** Without limiting Buyer's right to pursue any and all other rights and remedies available to it, it is expressly agreed that, to the fullest extent permissible by law, this Contract is subject to Buyer's right to set off any debts and/or claims against Seller, including, but not limited to those debts and/or claims that are exempt from a bankruptcy stay as provided in 11 U.S.C.§362 (b) (6).

13. **Non-Waiver.** Acceptance of any delivery of commodities by Buyer after breach of the terms and conditions of this Contract by Seller shall not waive any rights or remedies accruing to Buyer as a result of such prior breach.

14. **EEO.** BUYER IS AN EQUAL OPPORTUNITY EMPLOYER, and is a government contractor. Therefore this Contract is subject to the rules and regulations imposed upon contractors and subcontractors pursuant to 41 C.F.R. Chapter 60 and 61. Unless this Contract is exempt by regulations issued by the Secretary of Labor, there is incorporated herein by reference 41 C.F.R. Section 60—1.4; 41 C.F.R. Sections 60—250.5 and 61—250.10; and 41 C.F.R. Section 60—741.5.

15. **Amendment and Assignment.** None of the terms and conditions contained in this Contract may be added to, modified, superseded, or otherwise altered except with the written consent of an authorized representative of Buyer. This Agreement may be assigned by Buyer without Seller's consent but shall not be assigned in whole or in part by Seller without the prior written consent of Buyer.

16. **Water.** Seller represents, warrants and guarantees that no water has been added to the grain sold hereunder at any time or for any purpose except when used as a carrier for residual insecticides at manufacturer's recommended levels. Buyer may rely upon these representations in the resale of the commodities delivered hereunder.

XLYNX-134 (12/06)

# CARGILL, INCORPORATED    Purchase Contract

Buyer: Hickman, CAH
PO Box 267
Hickman, KY 42050

Contract: HICK-AH-49356
Firm Offer: HICK-AH-1086
Contract Date: 02/15/07
Page: 2 of 2



RECEIVED FEB 22 2007

Seller: Howell Farms, Sidney
1925 St. Rt. 2206
Clinton, KY 42031

Buyer confirms its purchase from Seller and Seller confirms its sale and obligation to deliver the listed Commodity to Buyer under the following terms and conditions:

Where present the terms of this agreement include terms and conditions set forth on the reverse side hereof, which form a part of this contract, and which are legally binding upon the Seller and Buyer.

Please sign and date the original and attached copy of this contract. The original must be returned to Buyer at the above-referenced address, and the copy should be retained for Seller's records.

Accepted (Seller): Howell Farms Clinton Ky.
(at address shown above)
By: Sidney Howell    2/20/07
            M D Y

Accepted (Buyer): Cargill, Incorporated
By: Kelly Humphrey    2/16/07
    Jarrod Ulen          M D Y
for
Jarrod Ulen

# CARGILL, INCORPORATED    Purchase Contract

Buyer: Hickman, CAH
PO Box 267
Hickman, KY 42050

Contract: HICK-AH-49401
Firm Offer: HICK-AH-1038
Contract Date: 02/16/07
Page: 1 of 1


FEB 26 2007

Seller: Howell Farms, Sidney
1925 St. Rt. 2206
Clinton, KY 42031

Buyer confirms its purchase from Seller and Seller confirms its sale and obligation to deliver the listed Commodity to Buyer under the following terms and conditions:

**No Basis Established Contract**

Line: 1 of 1
Audit: 30080

Commodity/Grade: U.S. No. 2 Yellow Corn
Quantity: 10,000.000 Bushel
Delivery Point: Delivered Hickman A (Ashland), CAH
Contract Price: USD 3.9700 Chicago Corn Sep 08 per Bushel
Price Type: No Basis Established

Shipment Period: 09/01/08-09/30/08
Weights to Govern: Destination Unofficial Weights
Grades to Govern: Destination Unofficial Grades
Rules to Govern: NGFA

**Transportation Terms**
Truck

**Discount Schedule**
yc #2 schedule at time of Unload

**Basis Terms**
Seller shall set the basis using Buyer's basis quotes at the Delivery Point for the Commodity and Shipment Period, on or before the EARLIER of (a) the first date of delivery during the Shipment Period, (b) the last business day of the Shipment Period or (c) the last business day before the first day of the Futures Reference Month, which is August 29, 2008. If Seller fails to set the basis as provided herein, Buyer shall have the right but not the obligation to set the basis.

**NBE Service Charges**
A service fee of USD 0.0200 per Bushel shall be assessed against Seller at the time the contract is entered and a service fee of USD 0.0100 per Bushel at each amendment of the futures reference month. The fees shall be due and payable at settlement. For deferred sales beyond current crop year, additional service fees may apply - see misc terms.

**Aflatoxin Clause**
Commodities delivered on this contract must not contain more than 20PPB aflatoxin at final destination. Aflatoxin test method to be selected by the Buyer. Test to be performed by Buyer or party selected by Buyer.

**United States Origin**
Seller guarantees that all commodities delivered under this contract have been, or will have been grown in the continental United States.

**Water Clause**
Seller also warrants that no water has been added to the grain sold hereunder at any time or for any purpose except when used as a carrier for residual insecticides at manufacturers recommended levels. These representations may be relied upon by the buyer in the resale of these commodities.

**Genetically Enhanced Crops**
Buyer will accept for delivery any genetically enhanced crops approved for use in the United States. Seller must notify the Buyer in writing prior to delivery of any non-European Union approved varieties under this contract.

---

Where present the terms of this agreement include terms and conditions set forth on the reverse side hereof, which form a part of this contract, and which are legally binding upon the Seller and Buyer.

Please sign and date the original and attached copy of this contract. The original must be returned to Buyer at the above-referenced address, and the copy should be retained for Seller's records.

Accepted (Seller): Howell Farms Clinton KY
(at address shown above)
By: Sidney Howell  2/21/07

Accepted (Buyer): Cargill, Incorporated
By: Jarrod Ulen  2/20/07

# PURCHASE TERMS

The statements below and on the reverse side are understood to be an accurate statement of the terms and conditions of the agreement between the parties hereto. Failure to advise Buyer immediately of any discrepancies, objections to or disagreement with such terms and conditions shall constitute acceptance of these terms and conditions.

1. **NGFA Trade and Arbitration Rules.** Unless otherwise provided herein, this Contract, and all other grain contracts by and between Buyer and Seller, shall be subject to the Trade Rules of the National Grain and Feed Association (NGFA), which Trade Rules are incorporated herein by reference. The parties agree that the sole forum for resolution of all disagreements or disputes between the parties arising under any grain contract between Buyer and Seller or relating to the formation of any grain contract between Buyer and Seller shall be arbitration proceedings before NGFA pursuant to NGFA Arbitration Rules. The decision and award determined by such arbitration shall be final and binding upon both parties and judgment upon the award may be entered in any court having jurisdiction thereof. Copies of the NGFA Trade and Arbitration Rules are available from Buyer upon request and are available at www.ngfa.org. In addition to any damages otherwise provided by law, Buyer shall be entitled to recovery of its attorney's fees and costs.

2. **Grade Factors and U.S. Origin.** Unless otherwise specified, official inspection shall include only official grading factors that are included in the United States Grain Standards Act. Seller represents, warrants and guarantees that all commodities delivered under this Contract have been or will have been grown in the continental United States.

3. **Buyer's Excuse from Performance.** Buyer shall not be liable for any prevention or delay in performance resulting in whole or in part, directly or indirectly, from fires, floods, or other acts of God; strikes; lockouts, or labor disputes; wars, riots, acts of terrorism, sabotage, or embargoes, actions by foreign, federal, state or local governments; shortages of transportation equipment, fuel, or labor; or any other circumstance beyond Buyer's control.

4. **Seller's Warranties.** Commodities sold hereunder must be of merchantable quality upon delivery. In addition, Seller guarantees that no carload or other shipping unit of the commodity covered by this Contract shall be adulterated or misbranded within the meaning of the Federal Food, Drug, and Cosmetic Act or is an article or commodity which may not, under the provisions of Section 404 or 505 of the Act, be introduced into interstate commerce or is in violation of any other provision of said Act. Seller further warrants that neither the commodity nor the shipment of such commodity shall be in violation of any and all other federal, state and local laws, regulations or ordinances, including without limitation the California Safe Drinking Water and Toxic Enforcement Act of 1986 (Proposition 65). If the commodity is adulterated under any applicable laws, or the commodity or its shipment is in violation of any other clause of this provision, Seller shall be in breach of this Contract, shall indemnify Buyer from all claims, costs, damages, and losses, whether arising out of Seller's negligence or strict liability, and Buyer may take advantage of any and all available remedies, whether under this Contract, at law or in equity.

5. **Title.** Title to, all rights of ownership in and risk of loss of the commodity shall remain in Seller until physical delivery to Buyer's designated Delivery Point, at which time such rights shall pass to Buyer unless delivery is made to Buyer under a storage agreement, in which case such rights shall pass upon application of the commodity to a purchase contract with Buyer.

6. **Liens and Merchant Status.** Seller agrees that when delivered hereunder, said commodity will be free and clear of all liens and encumbrances of every nature or, if any liens exist at time of delivery, Seller authorizes Buyer to make settlement jointly with the Seller and such person or persons in whose favor the lien or encumbrance has attached. The undersigned Seller represents and warrants to Buyer that Seller is a MERCHANT (as that term is used in the UCC) with respect to the commodity that is the subject matter hereof.

7. **Buyer Information.** Seller acknowledges that Seller is solely responsible for the marketing and pricing of the commodity and is entering into this Contract with full knowledge and understanding of the risks inherent in Seller's business and decisions. Any statements, information, opinions, or advice provided to Seller by Buyer's employees are provided solely for informational purposes and without guarantee, express or implied, on Buyer's part. Seller understands and agrees that any statements, information, opinions, or advice expressed by Buyer shall in no way operate to create any managerial or fiduciary obligation between Buyer and Seller.

8. **Alternate Delivery.** Buyer shall have the right to designate any reasonable alternate delivery points if necessary to expedite or facilitate Seller's performance of this Contract but shall have no obligation to do so. Increased shipping charges under this provision shall be for Seller's account and reductions in shipping charges shall be for Buyer's account; provided, however, that if the designated alternate delivery points are solely for Buyer's convenience, increased shipping charges shall be for Buyer's account.

9. **Freight Rates.** Any advance in applicable freight rates taking effect before fulfillment of this Contract shall be for Seller's account.

10. **Adequate Assurance.** Buyer shall have the right, when it has reasonable grounds for insecurity with respect to the performance of Seller, to demand adequate assurance of Seller's full performance. As adequate assurance, Buyer may demand payment from Seller up to an amount equal to the difference between the Contract price and the then prevailing market price for the commodity hereunder. Seller shall provide such adequate assurance within 48 hours of the receipt of the demand therefor. Seller's failure to provide adequate assurance as demanded by Buyer shall constitute Seller's repudiation of this Contract, and Buyer shall have the right to pursue all legally available remedies, including but not limited to recovery of its losses and damages, including, without limiting the foregoing, attorney's fees and costs incurring in litigation, arbitration, confirmation and execution.

11. **Cancellation.** Buyer expressly reserves the right to cancel this Contract without liability to Buyer because of (a) the insolvency or financial condition of Seller, (b) the commencement of a case under 11 U.S.C.§§101 et seq., (c) the appointment of or taking of possession by a trustee in a case under 11 U.S.C.§§101et seq. or by a custodian before such commencement, (d) any breach or default by Seller of the terms and conditions of this Contract.

12. **Set Off.** Without limiting Buyer's right to pursue any and all other rights and remedies available to it, it is expressly agreed that, to the fullest extent permissible by law, this Contract is subject to Buyer's right to set off any debts and/or claims against Seller, including, but not limited to those debts and/or claims that are exempt from a bankruptcy stay as provided in 11 U.S.C.§362 (b) (6).

13. **Non-Waiver.** Acceptance of any delivery of commodities by Buyer after breach of the terms and conditions of this Contract by Seller shall not waive any rights or remedies accruing to Buyer as a result of such prior breach.

14. **EEO.** BUYER IS AN EQUAL OPPORTUNITY EMPLOYER, and is a government contractor. Therefore this Contract is subject to the rules and regulations imposed upon contractors and subcontractors pursuant to 41 C.F.R. Chapter 60 and 61. Unless this Contract is exempt by regulations issued by the Secretary of Labor, there is incorporated herein by reference 41 C.F.R. Section 60—1.4; 41 C.F.R. Sections 60—250.5 and 61—250.10; and 41 C.F.R. Section 60—741.5.

15. **Amendment and Assignment.** None of the terms and conditions contained in this Contract may be added to, modified, superseded, or otherwise altered except with the written consent of an authorized representative of Buyer. This Agreement may be assigned by Buyer without Seller's consent but shall not be assigned in whole or in part by Seller without the prior written consent of Buyer.

16. **Water.** Seller represents, warrants and guarantees that no water has been added to the grain sold hereunder at any time or for any purpose except when used as a carrier for residual insecticides at manufacturer's recommended levels. Buyer may rely upon these representations in the resale of the commodities delivered hereunder.

XLYNX-134 (12/06)